IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| BECKY BAUGHMAN, et al., | HONORABLE JEROME B. SIMANDLE |
| Plaintiffs, | Civil No. 08-2901 (JBS/KW) |
| v. | **OPINION** |
| UNITED STATES LIABILITY INSURANCE COMPANY, |  |
| Defendant. |  |

APPEARANCES:

Scott B. Gorman, Esq.
GORMAN & GORMAN, ESQS.
Liberty View
457 Haddonfield Road
Suite 400
Cherry Hill, NJ 08002-2220
    Counsel for Plaintiffs Becky Baughman, Steven Baughman, and
    Kiddie Kollege Daycare & Preschool, Inc.

Lila Wynne, Esq.
MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN, PC
Woodland Falls Corporate Park
200 Lake Drive East
Suite 300
Cherry Hill, NJ 08002
    Counsel for Defendant United States Liability Insurance
    Company

**SIMANDLE**, District Judge:

    Presently before the Court is a motion submitted by
Plaintiffs Becky and Stephen Baughman for summary judgment on
damages for their successful breach of contract claim and for
assessment of attorneys fees pursuant to New Jersey Court Rule
4:42-9(a)(6) [Docket Item 26].  Defendant United States Liability
Company does not oppose summary judgment on damages, but objects

to Plaintiffs' request for attorneys fees, arguing that they should not be imposed in this case and that even if imposed Plaintiffs request an unreasonable amount.  For the reasons discussed below, the Court will grant Plaintiffs' motion for summary judgment as to damages in the amount of $82,695 and assess attorneys fees and costs in the amount of $208,748.5.

## I.  BACKGROUND

This action arose from a dispute regarding insurance coverage for several underlying state court actions arising out of alleged mercury contamination of Kiddie Kollege daycare center that had been owned by Plaintiffs.  Defendant had declined to defend or indemnify Plaintiffs in the underlying actions despite their comprehensive general liability ("CGL") policy.  In May 2008, Plaintiffs brought suit seeking declaratory judgment declaring that Becky Baughman, Stephen Baughman, and Kiddie Kollege are all insureds under the insurance policy and that Defendant was obligated to defend and indemnify them in the underlying actions, as well as reformation of the insurance policy, and damages for breach of contract, breach of implied duty of good faith and fair dealing, common law fraud, and fraud under the New Jersey Consumer Fraud Act.

Both parties brought motions for summary judgment.[1]  On

---

[1] In the motions process, Plaintiffs voluntarily dismissed (or clarified that they never sought) the following claims: (1) Plaintiffs no longer sought coverage for the Foster underlying action; (2) Plaintiffs no longer sought coverage for Kiddie

(continued...)

November 18, 2009, the Court granted partial summary judgment in favor of Plaintiffs, finding that Defendant was liable to Plaintiffs for breach of contract and ordering Defendant to defend and indemnify Plaintiffs in the underlying state court suits.  Baughman v. United States Liab. Ins. Co., 662 F. Supp. 2d 386, 393-400 (D.N.J. 2009).  The Court granted partial summary judgment in favor of Defendant on Plaintiffs' claims for breach of implied duty of good faith and fair dealing, common law fraud, reformation, and for violations of the New Jersey Consumer Fraud Act.  Id. at 400-01.

Plaintiffs now seek summary judgment on the question of damages and ask the Court to order Defendant to reimburse Plaintiffs for the attorneys fees and costs they incurred defending in the underlying class action suits.  Plaintiffs request a total of $82,695.  In support of this request Plaintiffs submit the affidavit of Michael Kassak, a partner at White and Williams, LLP, regarding the fees and costs of the underlying defense, along with contemporaneous billing records. (Kassak Certification and Exh. A.)  Defendant does not oppose this request for damages, (Def. Opp'n at 2), and this portion of Plaintiffs' damages claim will be awarded in the amount of $82,695.

---

[1] (...continued)
Kollege; (3) Plaintiffs did not seek coverage for punitive damages or claims related to property damage; and (4) Plaintiffs withdrew the claim for reformation.

Plaintiffs also request attorneys fees and costs for pursuing the instant claim for coverage with the law firm Gorman & Gorman, LLC.  Plaintiffs ask for a lodestar of $158,477, with $57,947 covering the services of Scott B. Gorman, Esquire, at an hourly rate of $325 for 178.3 hours of work on Plaintiff's successful claims, and $100,530 is sought for the services of Danielle Childs, Esquire, at an hourly rate of $225 for 446.8 hours of work on successful claims.[2]  The Plaintiffs ask for an enhancement of 100% the lodestar under Rendine v. Pantzer, 661 A.2d 1202 (N.J. 1995) as well as costs in the amount of $1,186, for a total award of fees and costs of $318,140.[3]

The following chart summarizes the attorneys fees Plaintiffs seek as prevailing parties:

---

[2] Mr. Gorman and Ms. Childs contemporaneously recorded the time they spent working on Plaintiffs' claims. (Gorman Aff. ¶ 19; Childs Certification Exh. A; Gorman Supp. Aff. Exh. M.)  Not all the records identify the specific claim for which the work was performed (and in some cases such distinction was not possible), so Mr. Gorman and Ms. Childs made a good faith estimate that for those hours where the claims were not distinguished (referred to as "block-billed" time records), at least 80% of the time was devoted to Plaintiffs' two successful claims. (Gorman Aff. ¶ 20.)  Defendant does not object to the 80% rate for recognizing block-billed services, but raises objections to the reasonableness of some of those services, as discussed further below.  Plaintiffs do not seek attorneys fees for work performed on unsuccessful claims, which are detailed in Gorman Aff. ¶¶ 16 and 17 (Exh. D and H), totaling 212.2 hours.

[3] This calculation includes hours that both attorneys worked after filing the initial motion requesting attorneys' fees.

| **Scott B. Gorman, Esq.** | **Total Hours** | **Hours on Successful Claims** |
|---|---|---|
| (a) Breach of contract | 45.9 | 45.9 |
| (b) Block billed (successful and unsuccessful claims) | 60.7 | 48.5 |
| (c) Fee Petition and Motion for Summary Judgment on Damages | 54.1 | 54.1 |
| (d) Unsuccessful claims | 65.7 | 0.0 |
| (e) Reply Brief on Fee Petition | 29.8 | 29.8 |
| Gorman Total Hours | 256.2 | 178.3 |
| **Gorman Total Fees (x $325 hourly rate)** | | **$57,947** |
| **Danielle Childs, Esq.** | **Total Hours** | **Hours on Successful Claims** |
| (a) Breach of contract | 351.5 | 351.5 |
| (b) Block billed (successful and unsuccessful claims) | 104.5 | 83.6 |
| (c) Fee Petition | 10.3 | 10.3 |
| (d) Unsuccessful claims | 113.0 | 0.0 |
| (e) Reply Brief on Fee Petition | 1.4 | 1.4 |
| Childs Total Hours | 580.7 | 446.8 |
| **Childs Total Fees (x $225 hourly rate)** | | **$100,530** |
| **Total Lodestar with Enhancement of 100%** | | $316,954 |
| **Costs** | | $1,186 |
| **TOTAL FEES AND COSTS** | | **$318,140** |

Mr. Gorman has been a practicing attorney for over twenty-nine years, twenty of which have been almost exclusively devoted to handling breach of contract claims, with a heavy focus on the insurance industry.  (Gorman Aff. ¶ 4.)  Ms. Childs has practiced law for over sixteen years, and has spent the past thirteen years with Gorman & Gorman devoting her time to legal research and writing on contract disputes, with a heavy focus on the insurance industry.  (Id. ¶ 5.)  On June 1, 2007, Plaintiffs entered into a contingency fee agreement with Gorman & Gorman which states that "The Attorneys will be compensated for services rendered only if recovery is actually obtained for the Clients."  (Gorman Aff. ¶ 9; Becky Baughman Certification Exh. A.)  Gorman & Gorman has not billed, and will not bill, Plaintiffs for their services.  (Gorman Aff. ¶ 10; Becky Baughman Certification ¶¶ 3-4.)

Mr. Gorman and Ms. Childs spent approximately one year gathering facts, performing legal research, preparing a demand letter to Defendant, preparing for litigation, and filing suit.  (Gorman Aff. ¶¶ 12-13.)  After initiation of the suit, the parties engaged in discovery, including requests for production of documents, exchange of interrogatories, and one deposition.  (Gorman Aff. ¶ 14; Wynne ¶ 7.)  Finally, Plaintiffs' attorneys worked on the motion practice both for their own motion for partial summary judgment and in opposition to Defendant's motion for summary judgment.  (Gorman Aff. ¶ 14.)

In addition to Mr. Gorman's affidavit, and in further support of their request for fees, Plaintiffs offer the following

6

evidence:

- Two affidavits from attorney Seth v.d.H. Cooley, Esquire, a partner at the law firm Duane Morris, LLP, certifying that the requested hourly rates for Mr. Gorman and Ms. Childs are "within the prevailing rates charged by attorneys with reasonably comparable skill, experience, and reputation" in southern New Jersey for environmental insurance coverage claims.  (Cooley Certification ¶¶ 4-5; Cooley Supp. Certification ¶ 5.)

- Details regarding the date, number of hours, and type of work Mr. Gorman and Ms. Childs performed for Plaintiffs on this action.  (Gorman Aff. Exhs. A-G; Gorman Supp. Aff. Exhs. K-L.)

- A sampling of contemporaneous time slips.  (Gorman Aff. Exh. M; Childs Certification Exh. A.)

- A copy of Plaintiffs' contingency fee retainer agreement with Gorman & Gorman.  (Becky Baughman Certification Exh. A.)

- A copy of Mr. Gorman's fourteen page demand letter to Defendant.  (Gorman Supp. Aff. Exh. P.)

In opposition, Defendant submit a certification from defense counsel Lila Wynne, Esquire, as well as an e-mail exchange between Ms. Wynne and Mr. Gorman in which Mr. Gorman stated that no invoices were prepared because representation was on a contingency basis.  (Wynne Certification Exh. A.)

## II.  DISCUSSION

### A.  Standard of Review

Summary judgment is appropriate when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party."  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law. Id.  Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.  Id.

### B.  Damages

Plaintiffs have offered admissible evidence to show that they incurred damages in the amount of $82,695 -- attorneys fees and costs -- due to Defendant's failure to provide a defense in the underlying class action lawsuits as required by the insurance contract.  (Kassak Certification & Exh. A.)  Defendant offers no argument or evidence in opposition to this motion and so the Court will grant summary judgment in favor of Plaintiffs on the question of damages and enter judgment in the amount of $82,695.

### C.  Attorneys Fees

#### 1.  Whether Plaintiffs are Entitled to Fees

Plaintiffs seek attorneys fees for the costs of this

8

litigation pursuant to New Jersey Court Rule 4:42-9(a)(6),[4] which provides in relevant part:

> 4:42-9. Counsel Fees
> (a) Actions in Which Fee Is Allowable. No fee for legal services shall be allowed in the taxed costs or otherwise, except . . .
> (6) In an action upon a liability or indemnity policy of insurance, in favor of a successful claimant.[5]

"The policy underlying Rule 4:42-9(a)(6) is to discourage groundless disclaimers and to provide more equitably to an insured the benefits of the insurance contract without the necessity of obtaining a judicial determination that the insured, in fact, is entitled to such protection." <u>Sears Mortgage Corp. v. Rose</u>, 634 A.2d 74, 88 (N.J. 1993) (internal citations and quotations omitted). "The theory is that one covered by a policy is entitled to the full protection provided by the coverage, and that benefit should not be diluted by the insured's need to pay counsel fees in order to secure its rights under the policy." <u>Liberty Village Assocs. v. West American Ins. Co.</u>, 706 A.2d 206, 212 (N.J. Super. Ct. App. Div. 1998).

Defendant does not dispute that Rule 4:42-9(a)(6) is

---

[4] "State rules concerning the award or denial of attorneys' fees are to be applied in cases where federal jurisdiction is based on diversity . . . provided such rules do not run counter to federal statutes or policy considerations." <u>McAdam v. Dean Witter Reynolds, Inc.</u>, 896 F.2d 750, 775 n.46 (3d Cir. 1990). The Court is not aware of any federal statutes or policy considerations that would counsel against applying Rule 4:42-9(a)(6) to this case.

[5] In their brief, Defendant incorrectly quotes Rule 4:42-9(a)(6) as stating that attorney's fees "shall be allowable to the prevailing party." (Def. Opp'n at 3.) In fact, the correct language is stated above.

applicable -- namely, that Plaintiffs brought an action seeking to secure their rights under a liability policy and that they were successful in securing coverage.  Instead, Defendant asks the Court to exercise its discretion and deny attorneys fees to Plaintiffs because Defendant denied coverage in good faith, given the complex legal question regarding the scope of the pollution exclusion.  New Jersey courts, however, have repeatedly found that the absence of bad faith and the complexity of the legal issues are not grounds to deny fees.  Sears Mortgage, 634 A.2d at 88 ("Although [the insurance carrier] may not have been acting in bad faith when it refused to honor [the insureds'] demands, to deny [the insureds] their counsel fees would be to deny them the benefits of the insurance contract that they achieved as successful litigants."); Clients' Sec. Fund of the Bar of N.J. v. Sec. Title & Guar. Co., 634 A.2d 90, 99 (N.J. 1993) (affirming Appellate Division decision that "An award of counsel fees is authorized by [R. 4:42-9(a)(6)] even if the insurer's refusal to honor a policy demand was in good faith and despite the novelty of the legal question upon which its basic liability depended."); Pressler, Current New Jersey Court Rules, Comment R. 4:42-9(a)(6) (2005) ("[T]he insurer's lack of bad faith will not preclude the discretionary allowance of a fee.").  This is so because the rule is not merely to deter insurers from denying coverage without reason, but also to ensure that insureds receive the full benefit of their purchased coverage.  See Sears Mortgage, 634 A.2d at 88; Liberty Village, 706 A.2d at 212.  The Court finds that

Plaintiffs are entitled to attorneys fees under Rule 4:42-
9(a)(6).

          2.   Whether Plaintiffs Have Requested a Reasonable
              Lodestar

To determine a reasonable counsel fee under New Jersey fee-
shifting statutes "the first and most important step in the
process is the determination of the 'lodestar': 'the number of
hours reasonably expended multiplied by a reasonable hourly
rate.'" Szczepanski v. Newcomb Medical Ctr., 661 A.2d 1232, 1236
(N.J. 1995) (quoting Rendine v. Pantzer, 661 A.2d 1202, 1226
(N.J. 1995); American Hardware Mut. Ins. Co. v. Harley Davidson
of Trenton, Inc., 124 F. App'x 107, 112-113 (3d Cir. 2005)
(applying Szczepanski and Rendine to Rule 4:42-9(a)(6)).  The
Court must not "accept passively the submissions of counsel to
support the lodestar amount," but must satisfy itself that the
assigned hourly rates are reasonable and that the "time actually
expended by counsel is the amount of time reasonably expended."
Rendine, 661 A.2d at 1226-27 (quoting Copeland v. Marshall, 641
F.2d 880, 891 (D.C. Cir. 1980)(emphasis in original)).

          a.   Reasonable Hourly Rate

"'Generally, a reasonable hourly rate is to be calculated
according to the prevailing market rates in the relevant
community.'" Rendine, 661 A.2d at 1227 (quoting Rode v.
Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990)).  To make this
calculation "'the court should assess the experience and skill of
the prevailing party's attorneys and compare their rates to the
rates prevailing in the community for similar services by lawyers

of reasonably comparable skill, experience, and reputation.'" <u>Id.</u> Compensation is to be based on current rates, rather than those in effect when the services were performed.  <u>Id.</u>  The prevailing party may meet its burden by submitting affidavits from local attorneys in the field testifying to the reasonableness of the requested rates.  <u>See</u> <u>Washington v. Philadelphia County Court of Common Pleas</u>, 89 F.3d 1031, 1036 (3d Cir. 1996).

In the present case, Plaintiffs have offered the certifications of Seth v.d.H. Cooley, Esquire, a partner with the law firm Duane Morris and Chair of the firm's Environmental Law Practice Group.  (Cooley Certification ¶¶ 1-2.)  Mr. Cooley states that he has reviewed the Court's November 16, 2009 Opinion and is familiar with the practice area of environmental insurance coverage claims.  (<u>Id.</u> ¶¶ 3-4.)  He further states that he is "familiar with the range of prevailing rates charged by attorneys with the skill and experience of plaintiffs' counsel in this case" and confirms that the requested hourly rates of $325 and $225 "are within the range of prevailing rates charged by attorneys with reasonably comparable skill, experience, and reputation" in southern New Jersey "for the type of work involved in this case."  (Cooley Certification ¶¶ 4-5; Cooley Supp. Certification ¶ 5.)  The Court further notes Mr. Gorman's twenty-plus years of experience handling insurance contract claims and Ms. Childs' thirteen years engaged in legal research and writing in this area.

Defendant offers no evidence in response to the above

certification, instead simply asserting in its brief that "the standard industry rate for coverage counsel in this area is $250"[6] without reference to Mr. Gorman's or Ms. Childs' particular skills or experience in the field.  This assertion, unsupported by evidence, is insufficient to call into question the unrebutted certifications from Mr. Cooley.  The Court finds that Mr. Gormans' requested hourly rate of $325 and Ms. Childs' hourly rate of $225 are reasonable given the prevailing market rates for attorneys with their levels of experience in the relevant region and in the relevant field.

b.    Reasonable Time Expended

When considering whether counsel has requested reasonable fees, the Court must exclude service hours that are "'excessive, redundant, or otherwise unnecessary.'"  <u>Rendine</u>, 661 A.2d at 1226 (quoting <u>Rode</u>, 892 F.2d at 1183).  To allow the Court to make this determination, "the attorney's presentation of billable hours should be set forth in sufficient detail to permit the trial court to ascertain the manner in which the billable hours were divided among the various counsel."  <u>Id.</u>

Plaintiffs offer the required detailed description of Mr.

---

[6] Defendant also asserts that Mr. Cooley "obviously was providing an opinion as to an environmental hourly rate in the Philadelphia area," while this is a "coverage action," not an environmental action, in southern New Jersey.  (Def. Opp'n at 6.) It is clear, however, from the face of Mr. Cooley's initial certification (which he begins by stating that he has been licensed to practice in New Jersey for over twenty years) as well as his supplemental certification that Mr. Cooley was providing an opinion regarding litigation of environmental insurance coverage claims in southern New Jersey.

Gorman and Ms. Childs billable hours, identifying the date, the specific nature of the work, the time taken for the work, and the attorney who performed the work.  (Gorman Aff. Exhs. A-G; Gorman Supp. Aff. Exhs. K-L.)  Those hours are divided into hours worked by Mr. Gorman on Plaintiffs' successful breach of contract claim (Exh. A), Mr. Gorman's block-billed time on both successful and unsuccessful claims (Exh. B), Mr. Gorman's time on the motion for summary judgment as to damages and attorneys fees (Exhs. C & K), and Mr. Gorman's time on unsuccessful claims (Exh. D).  Ms. Childs' hours are divided by work done for the breach of contract claim (Exh. E), block-billed time (Exh. F), time spent on damages and attorneys fees (Exhs. G & L), and time on unsuccessful claims (Exh. H).

Defendant objects to Plaintiffs calculation of billable hours on the grounds that Mr. Gorman and Ms. Childs did not keep contemporaneous time records, spent excessive time preparing for the case prior to bringing suit, spent excessive time drafting interrogatories, engaged in double-billing by billing for both attorneys' time during conferences, and spent excessive time on legal research, including multiple hours on the same legal issues.  The Court finds, and will explain below, that Plaintiffs' counsel expended a reasonable amount of time on the successful claims, with the exception of 20 hours of excessive legal research and .7 hours of duplicative recorded time.

The Court will quickly address Defendant's claim that the Court should doubt the billable hours because Plaintiffs' counsel

did not keep contemporaneous of records of their time.  This is belied by the record.  Mr. Gorman states in his affidavit that contemporaneous records were kept (Gorman Aff. ¶ 19) and subsequently Plaintiffs have submitted a sampling of Mr. Gorman's time slips (Gorman Supp. Aff. Exh. M.) and Ms. Childs' time slips (Childs Aff. Exh. A).  Defendant's argument is based on its counsel's misinterpretation of an email exchange between Ms. Wynne and Mr. Gorman, in which Ms. Wynne asks for copies of the original invoices prepared by Gorman & Gorman and Mr. Gorman responds that no invoices were prepared because representation was based on a contingency fee.  (Wynne Exh. A.)  That no invoices existed is natural and expected, because the client was not being billed for this contingency fee work.  The Court finds that Plaintiffs' detailed, sworn statements of hours, based on contemporaneous records, are sufficiently reliable to provide a basis for calculating reasonable attorneys fees.

Defendant next asks the Court to reduce Plaintiffs' lodestar amount based on excessive work performed before filing suit. Specifically, Defendant asks for a reduction of seven hours from Mr. Gorman's work before March 2008 and a reduction of sixty hours from Ms. Childs' time "for excessive billing during 2007 to 'think about the case'."  (Def. Opp'n at 14 n.2&3.)  With regards to Mr. Gorman's work in the year leading up to the present lawsuit, Mr. Gorman performed a total of 20 hours of work on all of Plaintiffs' claims, of which Plaintiffs are requesting payment for only 18.3 hours.  The work consisted of one hour reviewing

the new file, 7.3 hours performing legal research, several short
telephone conversations with Plaintiffs, two relatively short
meetings with Ms. Childs in which they reviewed documents and
drafts, a two hour meeting with Plaintiffs, quick e-mails to
Defendant, less than two hours correcting a draft of the demand
letter to Defendant, and approximately three hours revising the
complaint and meeting with Ms. Childs.  The Court concludes that
Mr. Gorman made efficient use of his time in the year leading up
to this action and the Court declines to reduce these hours.

With respect to Ms. Childs' work in 2007, as Plaintiffs
correctly point out, Ms. Childs' did not record any time for
"thinking about the case."  Instead, she describes in detail the
legal research she performed, the meetings held, the documents
reviewed, and the 14-page demand letter that she drafted.  The
Court will decline to reduce any of Ms. Childs' time for
"thinking about the case."  To the extent Defendant objects to
the time Ms. Childs spent performing legal research, the Court
will address that below.

Defendant argues that Ms. Childs spent an excessive amount
of time drafting and revising interrogatories and requests for
document production, for a total of 31.5 hours, and asks that
Court to reduce her time by 15 hours.  The summary of Ms. Childs'
hours shows that she recorded a total of 28.4 hours for work that
included preparation of interrogatories and production requests,
but which also included making revisions to the complaint,
meeting with Mr. Gorman regarding summary judgment, legal

16

research, and drafting letters to Plaintiffs, Defendant, and the Attorney General.  Of that, only 12.3 hours were devoted solely[7] to preparing interrogatories and production requests, of which Plaintiffs seek only 80% (because this time was block-billed), for a total of 9.8 hours.  Using Defendant's own calculations, a reasonable number of hours for preparation of interrogatories and document requests for the successful claims would be approximately 16.5 hours.  It appears that Ms. Childs, taking into consideration the time she spent on work beyond interrogatory preparation, spent close to 16.5 hours in her preparation of interrogatories and so the Court will not reduce those hours.

Defendant argues that Mr. Gorman and Ms. Childs are guilty of "double billing" because they each record time that they spent meeting with the other.  Defendant further argues that Mr. Gorman and Ms. Childs spent an excessive amount of time, 61.6 hours for Mr. Gorman and 14.6 hours for Ms. Childs, in these conferences.  Defendant asks the Court to reduce Mr. Gorman's conference hours by 14.6 hours.  Mr. Gorman records 54.1 hours of work for all claims (successful and unsuccessful, as well as the instant motion for summary judgment) of which part included a conference with Ms. Childs.  The vast majority of these entries, however, involved significant amounts of other work.  For example, a typical entry for Mr. Gorman reads:

---

[7] On August 7, 2008, Ms. Childs also received a scheduling order, but the Court assumes that the vast majority of this 3.5 hours was devoted to preparing interrogatories.

| 1/7/09 | Preparation for Status Conference; receipt and review of Defendant's Answers to Interrogatories; receipt and review of emails from [Ms. Wynne]; review of key documents in preparation for Status Conference; office conference with [Ms. Childs]. | 2.0 hours |

(Gorman Aff. Exh. B at 3.)  On review, a total of only 5.5 hours were devoted largely to a conference between the two lawyers, and those entries that are exclusively a conference lasted no more than .3 hours.  Ms. Childs records fewer of these conferences (she notes a total of 17 meetings, in contrast to Mr. Gorman's 36) because those discussions were encompassed by other work she was doing.[8]  The Court finds it entirely appropriate, and probably necessary, that the partner assigned to this case met periodically with the associate who performed most of the work.[9]  Moreover, paying both attorneys for their reasonable expenditure of time at these meetings is not "double-billing" -- both Mr. Gorman's and Ms. Childs' time is to be valued.  The Court will not reduce Mr. Gorman's time due to these conferences.

Defendant maintains that Ms. Childs performed excessive legal research and asks the Court to reduce her time by 122.7

---

[8] Ms. Childs explained: "For example, if I was preparing a brief, and I conferred with Mr. Gorman regarding the brief, the description of services on my time slip may say 'preparation of brief' because the office conference with Mr. Gorman was devoted to discussing the preparation of the brief."  (Childs Certification ¶ 4.)

[9] The Court notes that Plaintiffs' counsel efficiently allocated resources between associate and partner, so that Mr. Gorman's time was largely used in a supervisory capacity.

18

hours.[10]  Ms. Childs recorded 64.9 hours devoted entirely to
legal research on Plaintiffs' successful claims, with an
additional 60 hours devoted to work that included some legal
research on successful claims.  In total, Ms. Childs recorded
243.2 hours of work on both successful and unsuccessful claims,
some of which included legal research.  Many of those hours
included the time spent actually drafting the demand letter and
the summary judgment motion practice.  While it may be that the
time Ms. Childs spent on research was lengthy, given the novelty
and complexity of some of the legal issues in this case, the
Court will not reduce her time by 122.7 hours, which is almost
the full number of hours Ms. Childs recorded for legal research
(and otherwise) on successful claims.  As reflected in the
Court's November 12, 2009 Opinion, this case involved multiple
novel questions of New Jersey law (whether medical monitoring
constitutes "damages," whether exposure to harmful substances is
"bodily injury," and whether indoor mercury contamination is
"traditional environmental pollution") that required the Court to

---

[10] Defendant objects to the fact that Ms. Childs performed
much of her research prior to bringing suit and that she has
multiple entries in which she researched the same or similar
topics.  The Court finds it entirely reasonable that Plaintiffs'
counsel would perform much of their research prior to bringing
suit, in recognition of their obligations under Rule 11, Fed. R.
Civ. P. and in light of the lengthy demand letter issued in this
case in an admirable attempt to avoid litigation altogether.
Such pre-complaint research is prudent and reduces the risk of
filing claims that are not legally well-grounded.  The Court also
rejects the suggestion that multiple periods of research on the
same topic are necessarily unreasonable.  An answer may not be
obvious from the first or second attempt.

look to persuasive precedent from beyond this jurisdiction.

Nevertheless, the Court will deduct 20 hours from Ms. Childs' time as legal research that was excessive. The Court makes this deduction in light of Ms. Childs' more than a decade of experience as an attorney, which should lead to more efficient legal research than would be expected from a new lawyer. The many hours of research suggest that Ms. Childs was led down some blind allies and Defendant should not be required to cover the costs of inefficient or fruitless research. Much of Ms. Childs' research, however, was fruitful and is reflected in the thorough, thoughtful and persuasive briefs submitted on Plaintiffs' behalf, which the Court found to be of high quality, as well as the 14 page (single-spaced) demand letter. Therefore the Court will award fees for the majority of the time Ms. Childs' spent performing successful legal research and reduce that time by only 20 hours.

On one final point, the Court discovered in its review of the records that Mr. Gorman mistakenly included .7 hours spent on October 2nd and 3rd, 2008, in an email exchange with Ms. Wynne in both Exhibit A and Exhibit B, so the Court will deduct .7 hours from Mr. Gorman's time as duplicative.

In sum, the Court finds that Plaintiffs' counsel expended a reasonable amount of time performing the work required for this complicated case, with the exception of 20 hours of excessive

legal research and .7 hours of duplicative recorded time.[11]   The
Court has found that Mr. Gorman's hourly rate of $325 and Ms.
Childs' hourly rate of $225 are reasonable.   Consequently, the
Court will multiply the total number of hours reasonably expended
by Mr. Gorman on Plaintiffs' successful claims, 177.6, by his
hourly rate of $325, to get an amount of $57,720.   The Court will
multiply the total number of hours reasonably expended by Ms.
Childs on Plaintiffs' successful claims, 426.8, by her hourly of
$225, for a total of $96,030.[12]   The total lodestar amount is
$153,750.[13]   The Court will then add the uncontested costs of
$1,186.

> 3.   Whether Plaintiffs are Entitled to an Enhancement
> of the Lodestar and, If So, What Level of
> Enhancement

In addition to the traditional lodestar amount, Plaintiffs
ask for a 100% contingency enhancement based on the New Jersey

---

[11] Mr. Gorman discovered another duplicative entry, but made
that correction in reply through an amended lodestar amount.

[12] Defendant has no objection to Mr. Gorman's good faith
estimation regarding the percentage of block-billed hours devoted
towards successful claims (80%), and the Court finds it to be
reasonable.   The Court will adopt this figure in calculating the
lodestar.

[13] The Court will not further reduce this award on the
ground that Plaintiffs achieved only "partial or limited
success."   See Rendine, 661 A.2d at 1227.   While Plaintiffs did
not succeed on some of their claims, that failure has already
been factored into the lodestar, by the elimination of 212.2
hours attributable to unsuccessful claims and the reduction to
80% of the time expended for "block-billed" services, above.   For
those claims on which Plaintiffs did succeed, the success was
complete and significant because it entitles them to coverage for
what is likely to be extremely expensive on-going litigation.

Supreme Court's decision in <u>Rendine</u>.  Defendant objects to any
enhancement on the grounds that "[t]he litigation was not
complex, the issues were not 'novel' and the lawsuit was not
'risky.'"  The Court will apply a 35% enhancement for the reasons
explained below.

      "Both as a matter of economic reality and simple fairness,"
the New Jersey Supreme Court has held "that a counsel fee awarded
under a fee-shifting statute cannot be 'reasonable' unless the
lodestar, calculated as if the attorney's compensation were
guaranteed irrespective of result, is adjusted to reflect the
actual risk that the attorney will not receive payment if the
suit does not succeed." <u>Rendine</u>, 661 A.2d at 1228.  The Third
Circuit has since applied the <u>Rendine</u> enhancement to fees awarded
under Rule 4:42-9(a)(6). <u>American Hardware Mut.</u>, 124 F. App'x at
112-113.  To calculate the appropriate enhancement, "the court
should consider the result achieved, the risks involved, and the
relative likelihood of success in the undertaking." <u>Furst v.
Einstein Moomjy, Inc.</u>, 860 A.2d 435, 448 (N.J. 2004) (citing
<u>Rendine</u>, 661 A.2d at 1229).  A fee enhancement "ordinarily should
range between five and fifty-percent of the lodestar fee, with
the enhancement in typical contingency cases ranging between
twenty and thirty-five percent of the lodestar." <u>Rendine</u>, 661
A.2d at 1231.  The enhancement "should never exceed one-hundred
percent of the lodestar" and an award over 50% is only
appropriate in "rare and exceptional" cases.  <u>Id.</u>

      The Court finds that Plaintiffs have demonstrated that some

enhancement of the lodestar is appropriate in this case. Plaintiffs' counsel provided representation on a purely contingent basis and they were unable to mitigate the risk of non-payment by receiving partial payment in advance (in fact, they have received no payment). Moreover, the risk of failure was real. As this Court noted, "there was a reasonable basis for Defendant's decision to decline coverage, given the potential expanse of a literal reading of the absolute pollution exclusion and the technical meaning of 'damages.'" Baughman, 662 F. Supp. 2d at 400. Plaintiffs' prospect of success hinged on developing a case in which Defendant's declination of coverage, though based on a reasonable reading of the policy language, was nonetheless incorrect. An enhancement of some degree is appropriate, but in order to grant an enhancement of 100% as requested by Plaintiffs, and indeed to grant any enhancement over 50%, the Court would have to find that Plaintiffs' case is one of the "rare and exceptional" cases identified by Rendine.

To warrant an exceptional enhancement a case will have the following elements: (1) "the risk of nonpayment has not been mitigated at all;" (2) the "legal" risk or risk of failure "constitutes 'an economic disincentive independent of that created by the basis contingency in payment';" (3) "the result achieved is significant and of broad public interest;" (4) "no prospect existed for the attorney to be compensated by payment of a percentage of a large damages award;" and (5) "the relief sought was primarily equitable in nature." Rendine, 661 A.2d at

1229, 1231; <u>Gallo v. Salesian Soc'y</u>, 676 A.2d 580, 601 (N.J. Super. Ct. App. Div. 1996).

The Court finds that the present action does not meet all the elements of the "rare and exceptional" case and so is not entitled to an enhancement of 100%, but is entitled to an enhancement of 35%. The Court agrees that the first three elements are applicable to this action. The risk of nonpayment was not, and could not have been, mitigated because Plaintiffs signed a pure contingency fee retainer agreement and have not paid any portion of the attorneys fees that have accrued. The legal risk was significant given the potential scope of the broad language of the pollution exclusion provision and the novelty of the damages issue. In part because of this risk, especially the absence of controlling law on the subject, the outcome is probably one of broader public interest than the typical declaratory judgment case involving insurance coverage. As discussed at length in the Court's November 12, 2009 Opinion, the New Jersey Supreme Court has provided little guidance on the meaning of "traditional environmental pollution," despite the prevalence of the absolute pollution exclusion in standard comprehensive general liability ("CGL") policies. <u>Baughman</u>, 662 F. Supp. 2d at 397. The Order requiring Defendant to defend and indemnify Plaintiffs for lawsuits arising out of mercury contamination therefore provides new guidance on the scope of an exclusion that is widely used.

The final two elements, however, are not satisfied here.

The Court so finds, noting that Plaintiffs choose to ignore all of their unsuccessful claims when seeking such a large enhancement.  Plaintiffs' complaint raises six causes of action, all but two of which sought compensatory damages.  Moreover, Plaintiffs sought treble damages under the New Jersey Consumer Fraud Act ("NJCFA"). (Compl. at 26.)  Had Plaintiffs succeeded on summary judgment on those NJCFA claims they would have recovered an award of approximately $248,085, or three times the cost of defending themselves in the underlying state court suits.  The Court cannot find, therefore, that Plaintiffs had "no prospect" of receiving a large damages award or that the relief sought was "primarily" equitable.  Nevertheless, because three of the five factors are present, the Court concludes that an enhancement at the high end of the typical range would be appropriate "to reflect the actual risk that the attorney will not receive payment if the suit does not succeed" under Rendine.  The Court will therefore apply a 35% enhancement to Plaintiffs' lodestar.

## III. CONCLUSION

For the foregoing reasons, the Court will grant Plaintiffs' motion for summary judgment on damages and enter judgment in the amount of $82,695.  In addition, pursuant to New Jersey Court Rule 4:42-9(a)(6) the Court will assess attorneys fees to be paid by Defendant and finds that Plaintiffs have established a reasonable lodestar of $153,750.00.  The Court will apply a 35% lodestar enhancement, for an attorneys fee award of $207,562.50.  Finally, the Court will award costs in the amount of $1,186, for

a total award of costs and fees of $208,748.50.  The requested
fees and the approved fees can be found in the chart below:

| **Scott B. Gorman, Esq.** | **Total Hours** | **Hours on Successful Claims** | **Fee Approved** |
|---|---|---|---|
| (a) Breach of contract | 45.9 | 45.9 | 45.2 |
| (b) Block billed (successful and unsuccessful claims) | 60.7 | 48.5 | 48.5 |
| (c) Fee Petition and Motion for Summary Judgment on Damages | 54.1 | 54.1 | 54.1 |
| (d) Unsuccessful claims | 65.7 | 0.0 | 0.0 |
| (e) Reply Brief on Fee Petition | 29.8 | 29.8 | 29.8 |
| Gorman Total Hours | 256.2 | 178.3 | 177.6 |
| **Gorman Total Fees (x $325 hourly rate)** | | $57,947 | **$57,720.00** |
| **Danielle Childs, Esq.** | **Total Hours** | **Hours on Successful Claims** | **Fee Approved** |
| (a) Breach of contract | 351.5 | 351.5 | 331.5 |
| (b) Block billed (successful and unsuccessful claims) | 104.5 | 83.6 | 83.6 |
| (c) Fee Petition | 10.3 | 10.3 | 10.3 |
| (d) Unsuccessful claims | 113.0 | 0.0 | 0.0 |
| (e) Reply Brief on Fee Petition | 1.4 | 1.4 | 1.4 |
| Childs Total Hours | 580.7 | 446.8 | 426.8 |
| **Childs Total Fees (x $225 hourly rate)** | | $100,530 | **$96,030.00** |
| **Total Lodestar** | | $158,477 | **$153,750.00** |

26

| | | | |
|---|---|---|---|
| **Total Lodestar with Enhancement of 35%** | | | **$207,562.50** |
| **Costs** | | $1,186 | **$1,186.00** |
| **TOTAL FEES AND COSTS** | | $318,140 | **$208,748.50** |

The accompanying Order shall be entered.

**July 13, 2010**            **s/ Jerome B. Simandle**
Date                    JEROME B. SIMANDLE
                    United States District Judge